**SCHEPER KIM & HARRIS LLP**
WILLIAM H. FORMAN (State Bar No. 150477)
wforman@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
MARGARET E. DAYTON (State Bar No. 274353)
pdayton@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, California 90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

Attorneys for Defendants Richard J.
Covelli, JTR LLC, C&C Marketing LLC,
C2 Advisors, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, as statutory trustee of The Retirement Plan of Freedom Communications, Inc., <br><br>            Plaintiff, <br><br>      v. <br><br> AARON KUSHNER; ERIC SPITZ; RICHARD COVELLI; TRACI M. CHRISTIAN; JTR, LLC; C&C MARKETING LLC; C2 ADVISORS, LLC; ETAROS ACTUARIAL SERVICES, LLC, <br><br>            Defendants. | CASE NO. 8:19-cv-00299-DOC-DFM <br><br> **BRIEF OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2 ADVISORS LLC REGARDING SETTLEMENT SET-OFF** <br><br> Date:     None Set <br> Time:     None Set <br> Courtroom: 9D <br><br> Trial Date:  None Set |

## **TABLE OF CONTENTS**

Page

I.  Introduction ...................................................................................................1

II. Legal Analysis ................................................................................................3

    A.    The Covelli Defendants Are Entitled To A Set-Off Pursuant To CCP Sections 877 And 877.6 And The PBGC's Allegations. ..............3

        1.    California Good Faith Settlement Law. ........................................3

        2.    Cal. Code Civ. Proc. Sections 877 and 877.6 Govern the Settlement Approval and Set-off Inquiry. ..................................4

        3.    The Text of CCP Sections 877 and 877.6 Does Not Require Non-Settling Defendant to Establish a Contribution or Indemnification Claim. ...............................................................6

        4.    The Complaint's Allegations and Relief Requested Do Not Prevent the Covelli Defendants From Seeking a Set-Off........................7

    B.    Ninth Circuit Case Law Interpreting ERISA Does Not Bar Any Claim by the Covelli Defendants For Contribution Or Indemnification. ....................................................................................11

    C.    Covelli Defendants Have A Right To Bring A Contribution Or Indemnification Action Under State Or Federal Common Law..........13

    D.    The Covelli Defendants Are Entitled To Bring Contribution or Indemnification Claims In The Bankruptcy Action. ..........................18

III. CONCLUSION ..............................................................................................19

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2 ADVISORS LLC

# **TABLE OF CONTENTS**

Page

Federal Cases

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ................................................................................ 14

*Bd. of Trs. of Cal. Winery Workers Pension Tr. Fund v. Union Bank N.A.,*
2011 WL 1321602 (N.D. Cal. Apr. 6, 2011) ........................................... 13

*Brown v. Cal. Law Enforcement Ass'n, Long-Term Disability Plan,*
81 F. Supp. 3d 930 (N.D. Cal. 2015) ...................................................... 13

*Call v. Sumitomo Bank of Cal.,*
881 F.2d 626 (9th Cir. 1987) ................................................................... 13

*Chemung Canal Tr. Co. v. Sovran Bank/Maryland,*
939 F.2d 12 (2d Cir. 1991) ......................................................... 16, 17, 18

*Chemung,*
838 F.2d ................................................................................................... 17

*Depot, Inc. v. Caring for Montanans, Inc.,*
915 F.3d 643 (9th Cir. 2019) ................................................................... 10

*Eaves v. Penn,*
587 F.2d 452 (10th Cir. 1987) ................................................................. 16

*ERISA.  Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,*
530 U.S. 230 (2000) ................................................................................ 15

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989) ................................................................................ 15

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ................................................................................ 10

*Guididas v. Comm'y Nat. Bank Corp.,*
2012 WL 5974984 (M.D. Fla. Nov. 5, 2012) .......................................... 17

*Hansen v. Grp. Health Cooperative,*
902 F.3d 1051 (9th Cir. 2018) ........................................................... 14, 15

*Harris Trust,*
530 U.S. ............................................................................................. 16, 17

*In re Gorina,*
269 B.R. 23 (C.D. Cal. 2002) .................................................................. 19

3

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2
ADVISORS LLC

*Kim v Fujikawa*,
    871 F.2d 1427, (9th Cir. 1987) ........................................................................... 11, 12, 13

*Knudson*,
    534 U.S. .................................................................................................................. 10

*Kokesh v. SEC*,
    137 S.Ct. 1635 (2017) ........................................................................................... 10

*Meoli v. Am. Medical Servs.*,
    35 F. Supp. 2d 761 (S.D. Cal. 1999) ...................................................................... 13

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987) ................................................................................................. 14

*SEC v. Huffman*,
    996 F.2d 800 (5th Cir. 1993) ................................................................................... 9

*Sorosky v. Burroughs Corp.*,
    826 F.2d 794 (9th Cir. 1987) ................................................................................. 14

*Teets v. Great West Life & Ann. Ins. Co.*,
    921 F.3d 1200 (10th Cir. 2019) ............................................................................. 10

*Texas Indus. Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ............................................................................................... 12

*Youngberg v. Bekins Co.*,
    930 F. Supp. 1396 (1996) ....................................................................................... 13

State Cases

154 Cal. App. 4th 1337 (2007) .................................................................................... 7

228 Cal. App. 3d, 404 (1991) ...................................................................................... 7

*Abbot Ford, Inc. v. Superior Court*,
    43 Cal. (1987) .......................................................................................................... 3

*Abbott Ford*,
    43 Cal. 3d ................................................................................................................. 4

*American Motorcycle Assn. v. Superior Court*,
    20 Cal.3d 578 (1978) ............................................................................................. 14

*Carr v. Cove*,
    33 Cal. App. 3d 851 (1973) ...................................................................................... 9

*Hoch v. Allied-Signal, Inc.*,
    24 Cal. App. 4th 48 (1994) ....................................................................................... 7

Case No. 8:19-cv-00299-DOC-DFM
BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2
ADVISORS LLC

*Reed*,
   73 Cal. App. 4th 444- ........................................................................................ 19

*Regan Roofing Co. v. Superior Court*,
   21 Cal. App. 4th 1685 (1994)............................................................................. 3

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*,
   38 Cal. 3d 488 (1985)......................................................................................... 3

*United Servs. Automobile Ass'n v. Superior Court*,
   93 Cal. App. 4th 633 (2001)............................................................................... 4

Federal Statutes

§ 1132 ................................................................................................. 12, 13, 14, 15

§ 1132(a)(1)-(11) ................................................................................................ 15

§ 1132(a)(1)(B) .................................................................................................. 14

§ 1132(a)(3) ....................................................................................................... 14

29 U.S.C. § 1132(a) ........................................................................... 11, 12, 14, 15

State Statutes

§ 877(a)-(d), § 877.6 ............................................................................................ 6

§ 877(b) ................................................................................................................ 4

§ 877(b)-(d) and § 877.6 ..................................................................................... 6

§ 877.6(c) ............................................................................................................. 4

Cal. Code Civ. Proc. § 875 ............................................................................... 13

Cal. Code Civ. Proc. § 875(a) .......................................................................... 14

Cal. Code Civ. Proc. § 877(a) ............................................. 1, 2, 3, 4, 6, 7, 9, 12, 18, 19

Cal. Code Civ. Proc. § 877.6 ................................................................. 2, 5, 18, 19

CCP Sections 877 And 877.6 ............................................................ 2, 1, 2, 3, 4, 6, 13

Other Authorities

G. Bogert, The Law of Trusts and Trustees, § 868, p. 101 (Rev. 2d ed. 1995) ............................. 16

S.B. 412 ................................................................................................................ 3

*Soohyun Cho v. First Reliance Standard Life Ins. Co.*,
   2019 WL 324723 (C.D. Cal. Apr. 8, 2019)....................................................... 13

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2
ADVISORS LLC

# I.     INTRODUCTION

Settling Defendants Kushner's and Spitz's ("Settling Defendants") Motion for Determination of Good Faith Settlement pursuant to Cal. Code Civ. Proc. Sections 877 and 877.6 (California Good Faith Settlement Law) (Doc. 59) is before this Court because the PBGC, in its Settlement with Settling Defendants, agreed that Settling Defendants would bring the Motion. Now the PBGC argues that part of this Law should not be applied, and points to a Ninth Circuit case, which does not even address the California Good Faith Settlement Law, as the reason for abrogating the Defendants' Richard J. Covelli, JTR LLC, C&C Marketing LLC, and C2 Advisors, LLC (collectively, the "Covelli Defendants") statutory rights. The PBGC's position thus amounts to 1) asking the Court to disregard a mandatory provision of the California Good Faith Settlement Law, 2) when the PBGC agreed that Settling Defendants would ask this Court for approval of its proposed Settlement with Settling Defendants under that same Law, and 3) to rely on a case that does not even mention the Law to deny an unambiguous statutory right. The word "unprecedented" is thrown around casually in briefs, but this scenario merits it.

**The Statute Is Mandatory**:  Cal. Code Civ. Proc. § 877(a) mandates that the Covelli Defendants be credited a set-off from the proposed Settlement between the Pension Benefit Guaranty Corporation ("PBGC") and Settling Defendants.  There is no exception to the statute, or discretion afforded to a court to not implement the settlement credit.  For instance, the statute does not require a non-settling defendant show that it could have a meritorious claim for contribution or indemnity against the settling defendant.  The credit is imposed, period.  Furthermore, because the allegations against and the relief sought from the Covelli Defendants and the Settling Defendants arise from the *same* harm purportedly caused to the Pension Plan (the "Plan") as a result of the *same* two transactions, permitting the Covelli Defendants to seek a set-off in this case furthers the California legislature's policy goal of preventing double recoveries.

**The Statue Applies, As the PBGC Has Agreed**:  There is no question that Cal. Code Civ. Proc. § 877, *et seq.*, applies to the Settlement – and the related contribution/indemnity bar and set-off inquiries – pending before the Court.  The PBGC consented to the application of California law when it agreed in the proposed Settlement that "Kushner and Spitz shall jointly file a motion in the District Court in the PBGC Action seeking a finding that the settlement embodied in [the Settlement Agreement] was made in good faith pursuant to Cal. Code Civ. Proc. § 877.6.  (Doc. 59-1, § 2.)  And, having failed to object to the application of California law in its Statement of Non-Opposition filed in response to Settling Defendant's Motion for Determination of Good Faith Settlement, or during the two oral arguments before the Court, the PBGC cannot in good faith contend that a law other than California's applies.

*Kim* **Is Irrelevant**.  The PBGC maintains that the question of whether the Covelli Defendants are entitled to a set-off is foreclosed by the Ninth Circuit decision's in *Kim v. Fujikawa*, in which the Ninth Circuit held that ERISA does not permit claims for contribution among co-fiduciaries.  This is a distraction.  This decision did not address a proposed settlement and set-off under California law or any other law.  This decision did not opine on whether a non-settling defendant must establish a valid claim for contribution or indemnification in order to seek a set-off.  This decision did not address claims for contribution under ERISA in favor of *non-fiduciaries*.

**The Covelli Defendants Have Contribution Rights.**  The Court need not reach the question of whether the Covelli Defendants can establish a claim for contribution or indemnification under ERISA because § 877(a) does not require this inquiry.  But, even if the Court were to address this question, the Covelli Defendants, if not for the contribution bar being sought under the Settlement, would have the right to bring an action for contribution against Settling Defendants under state or federal common law.  Therefore, the entire premise of the

PBGC's argument – that the Covelli Defendants do not have a valid claim to contribution – is not only irrelevant under § 877, it is simply not true.

## II.  LEGAL ANALYSIS

### A.  The Covelli Defendants Are Entitled To A Set-Off Pursuant To CCP Sections 877 And 877.6 And The PBGC's Allegations.

The PBGC contends that the Covelli Defendants are not entitled to a set-off pursuant to Cal. Code Civ. Proc. § 877(a) because, according to the PBGC, they do not have a valid contribution or indemnity claim under substantive ERISA law.  This contention is incorrect. Nothing in § 877 or § 877.6 requires a non-settling defendant – here, the Covelli Defendants – to establish the existence of or prevail on a claim for contribution or indemnity against a settling defendant as a pre-requisite for seeking a set-off pursuant to § 877(a).  The PBGC's contrary contention amounts to an attempt to engraft an additional requirement onto this statute that does not currently exist.  Furthermore, the duplicative nature of the PBGC's allegations against and the relief sought from both the Covelli Defendants and Settling Defendants furthers the purpose of the California Good-Faith Settlement law to prevent or diminish double recoveries.

#### 1.  California Good Faith Settlement Law.

Cal. Code Civ. Proc. § 877 and § 877.6[1] provide the statutory grounds for a settling defendant to seek a judicial determination that a proposed settlement was made in good faith. These sections apply to a settlement agreement reached "before verdict or judgment to one or

---

[1] These sections were enacted together as part of California's tort contribution legislation, which was intended to address the harsh of effect of the no-contribution rule as to joint tortfeasors under the common law.  S.B. 412 (1955) (pt. 2, tit. 11); *see also Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (1985) (reviewing legislative history).  Because both § 877 and § 877.6 apply to potential good-faith settlements and are used to further the California legislature's goal of "ameliorating the punitive effect of the no-contribution rule upon joint-tortfeasors," the sections are almost invariably discussed by California courts in tandem.  *See generally Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (1985); *Abbot Ford, Inc. v. Superior Court*, 43 Cal. 858 (1987); *Regan Roofing Co. v. Superior Court*, 21 Cal. App. 4th 1685 (1994).  Therefore, these sections are collectively referred to in this Motion as "California Good Faith Settlement Law."

1   more of a number of tortfeasors claim to be liable for the same tort, or to one or more other co-

2   obligors mutually subject to contribution rights."  § 877.

3          There are two central features of California Good Faith Settlement Law:  1) the

4   contribution bar; and 2) the set-off.  As to the contribution bar, § 877.6(c) provides that a good-

5   faith determination "shall bar any other joint tortfeasor or co-obligor from any further claims

6   against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or

7   comparative indemnity, based on comparative negligence or comparative fault."  § 877.6(c); *see*

8   *also* § 877(b).  And as to the set-off, a good-faith determination "shall have the [] effect of

9   "reduc[ing] the claims against the others in the amount stipulated by the release, the dismissal or

10  the covenant, or in the amount of the consideration paid for it, whichever is greater."  § 877(a).

11

12  California courts have noted that, together, these sections "have two major goals: the equitable

13  sharing of costs among the parties at fault and the encouragement of settlements."  *Abbott Ford*,

14  43 Cal. 3d at 872.  Furthermore, these "two goals are inextricably linked.  Section 877 establishes

15  that a good faith settlement bars other defendants from seeking contribution from the settling

16  defendant, but at the same time provides that the plaintiff's claims against the other defendants are

17  to be reduced by . . . the settlement" amount.  *Id.*  Indeed, other California courts have noted that

18

19  the "settlement credit is a 'fundamental feature' of the good faith settlement process."  *United*

20  *Servs. Automobile Ass'n v. Superior Court*, 93 Cal. App. 4th 633, 641 (2001).

21          **2.     Cal. Code Civ. Proc. Sections 877 and 877.6 Govern the Settlement
            Approval and Set-off Inquiry.**

22

23          As an initial matter, the Court has asked the parties whether California state law governs

24  the Settlement approval and the related determination of whether to grant a contribution/indemnity

25  bar in favor of Settling Defendants and set-off in favor of the Covelli Defendants.  But the PBGC

26  already has agreed that California law does apply.  The proposed Settlement between Settling

27  Defendants, the Official Committee of Unsecured Creditors of Freedom Communications, Inc. in

28

**BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2
ADVISORS LLC**

the bankruptcy action, and the *PBGC*, conditions approval of the Settlement upon "[e]ntry of an order by the District Court in the PBGC Action finding that the settlement embodied in this Agreement **was made in good faith pursuant to Cal. Code Civ. Proc. § 877.6** (or statutes or case law of similar effect)." (Doc. 59-1, 8, § 1(c)) (emphasis added).)  *That is from the Settlement that the PBGC agreed to.*

Furthermore, Settling Defendants' Motion for Determination of Good Faith Settlement ("Settling Defendants' Motion") unambiguously invoked the substantive provisions of California Good Faith Settlement Law by requesting that the Court determine that the proposed Settlement was made in "good-faith" such that "all claims and demands by any party for contribution, equitable comparative contribution, equitable indemnity, partial or comparative indemnity, equitable or implied contractual indemnity, or any other claims are barred." (Doc. 59, 13:28-14:3); (*see also* Doc. 64, 2:22-26) ("The Settlement Agreement is the epitome of a reasonable, good faith settlement that should be approved under the leading California federal authority . . . and the California good faith settlement statute.".)  In response to this clear invocation of California law, PBGC has not submitted any argument or briefing to the contrary.[2]  The PBGC did not file any objection or opposition to Settling Defendants' Motion for Determination of Good-Faith Settlement as to the application of California law.  All that the PBGC did was file a Statement of Non-Opposition expressly "reserv[ing] the right to oppose any timely application by the Non-Settling Defendants for a determination of any offset as a result of the settlement." (Doc. 63, 1:28-2:2.)  That is clearly *not* a statement that California law does not apply to the settlement determination.  Rather, it amounts to a concession that the PBGC is happy to reap the benefits of California law in having the Court enter a determination of good faith settlement, but may later

---

[2] Although Settling Defendants' Motion indicates that federal common law may also provide a basis for the Court to evaluate the Settlement, the proposed Settlement does not clearly invoke federal common law as the basis for approval of the settlement.  (*See generally* Doc. 59-1.)

argue that the parts of the law it does not like should be disregarded.  This position has nothing to do with ERISA preemption or any argument for non-application of California law that the PBGC may put forward.  It is nothing but the old playground rule of "heads I win and tails you lose." Having *agreed* that Settling Defendants *should* move under California law for approval of its settlement with them, and having failed to oppose the Settling Defendants motion, the PBGC cannot now argue that the court should only apply part of the California Good Faith Settlement Law.

>        **3.      The Text of CCP Sections 877 and 877.6 Does Not Require Non-Settling Defendant to Establish a Contribution or Indemnification Claim.**

Section 877(a) provides that a settlement determined to be in good faith "**shall** reduce the claims against the other [tortfeasors claimed to be liable for the same tort or co-obligors] in the amount stipulated by the release, . . . . or in the amount of the consideration paid for it, whichever is the greater."  § 877(a) (emphasis in original).  The unambiguous text of this section, as well as the text of the subsequent provisions of § 877(b)-(d) and § 877.6, does not create exceptions to its applications.  In particular, it does not require a non-settling defendant to establish or prevail on a valid contribution or indemnity claim against the settling defendant in order to obtain a set-off. *See generally* § 877(a)-(d), § 877.6.  There are many reasons why a non-settling defendant might not have a valid contribution claim, such as *in pari delicto* or that the non-settling defendant has assigned its claim.  But § 877 nowhere states that the existence or non-existence of a contribution claim by the non-settling defendant is bar to its application, or a limitation on its injunction that the settlement "shall" reduce claims against the non-settling defendant.  The statute does not contain a single reference to whether and how any contribution or indemnity claims brought by the non-settling defendant might impact the set-off available under § 877(a).  In fact, the *only* limiting principle embodied in § 877(a) as to a non-settling defendant's right to a set-off is expressed in terms of "claims":  a good faith settlement will reduce the "*claims* against the other[]" tortfeasors claimed to be liable for the same tort or co-obligors.  § 877(a) (emphasis added).  But the PBGC has never argued that the words "claims" in the statute does not apply to the claims it asserts against the Covelli Defendants, and the Covelli Defendants are aware of no case or statute that

defines "claims" in terms other than its ordinary meaning.  Therefore, the PBGC can point to *no statutory provision or case law* requiring the Covelli Defendants to establish a contribution or indemnity claim against the Settling Defendants in order for the Court to award a set-off to the Covelli Defendants pursuant to § 877(a).  Indeed, such an argument requires re-writing an unambiguous statute.

**4.      The Complaint's Allegations and Relief Requested Do Not Prevent the Covelli Defendants From Seeking a Set-Off.**

The clear language of § 877(a) ends the discussion of whether there should be a settlement set-off.  But in addition to the language of the statute, there are two reasons why the nature of the allegations and the relief sought by the PBGC against the Covelli Defendants make perfect sense for a set-off in this case.  First, the PBGC's allegations against the Covelli Defendants and those brought against the Settling Defendants arise from a singular, indivisible harm:  alleged losses to the Pension Plan caused by two investments.  Because these allegations stem from the same harm, § 877(a)'s provision authorizing a set-off to "the claims against" other joint tortfeasors, as interpreted by California courts, plainly applies.  § 877(a).  Second, the relief sought against the Covelli Defendants, although superficially labelled as "disgorgement," explicitly encompasses restitution in the form of fees paid by the Plan to the Covelli Defendants.  This relief sought overlaps with the relief that that PBGC sought from the Settling Defendants and thus presents a double recovery.

**First,** § 877(a)'s set-off provision applies to the claims brought against the Covelli Defendants because those claims stem from the *same transactions* as those that gave rise to the allegations against the Settling Defendants.  In *El Escorial Owner's Ass'n v. DLC Plastering, Inc.*, the court approved set-off credits where the settlement's allocations were segregated based on the type construction defects caused by multiple defendants – *i.e.* the harm suffered by the plaintiff – despite the fact that different causes of action were brought against the settling and non-settling defendants.  154 Cal. App. 4th 1337, 1352-53 (2007).  And in *May v. Miller*, the court approved a set-off where there was no evidence that either of the defendants had caused "separate and distinct damages."  228 Cal. App. 3d, 404, 409-10 (1991); *accord Hoch v. Allied-Signal, Inc.*, 24 Cal.

1   App. 4th 48, 63-64 (1994) (finding set-off unavailable because noneconomic damages caused by

2   nonsettling defendants were "separate and distinct" from those caused by settling defendants and

3   therefore, "there is no amount that represents a common claim . . . against the settling and

4   nonsettling defendants").

5           Here, the PBGC's allegations against the Covelli Defendants and the Settling Defendants

6   both follow from the same harm:  purported losses to the Pension Plan caused by the Participant

7   Life Insurance and LT Funding transactions.  As to the Participant Life Insurance transaction, the

8   PBGC summarily alleges that the Covelli Defendants "proposed and facilitated" the investment.

9   (Doc. 1, ¶¶ 64-65), while the Settling Defendants, despite receiving a warning that the investment

10  was unsound, "caused" and "implemented" the investment.  (Doc. 1, ¶¶ 6, 7; 71-79.)

11          The Complaint's allegations regarding the LT Funding transaction follow this same

12  pattern.  The PBGC again alleges that Covelli "persuaded" Settling Defendants to undertake the

13  investment, (*id.*, ¶ 82), while Settling Defendants "authorized and caused" the Transaction (*id.*, ¶

14  88) and "knowingly caused the Pension Plan to overstate the fair market value of the LT Funding

15  in the Pension Plan's subsequent Annual Reports."  (*Id.*, ¶ 91.)  Although these superficial

16  allegations of the role played by the Covelli Defendants versus that played by Settling Defendants

17  indicates apparent differences ("persuaded" versus "authorized and caused"), the Complaint

18  alleges *no facts* to support these allegations and, importantly, fails to allege that the different

19  actions taken by the Covelli Defendants and Settling Defendants, if any, resulted in distinct harm

20  to the PBGC.  The Complaint provides no basis to escape the conclusion that the Covelli

21  Defendants and Settling Defendants purportedly caused "indivisible consequential damages to the

22  [Pension Plan] as a whole," *El Escorial Owners Ass'n*, 154 Cal. App. 4th at 1353.

23          **Second,** the "disgorgement" relief sought by the PBGC as to the Covelli Defendants

24  overlaps with the relief the PBGC sought from the Settling Defendants.  The Complaint seeks

25  "disgorgement of all commissions, fees and other financial benefits" paid from Plan to the Covelli

26  Defendants pursuant to § 1132(a)(3) of ERISA.  (Doc. 1, ¶¶ 170, 189, 231, 240; Prayer for Relief.)

27  At the hearing of November 12, 2019, Mr. Rudderman of the PBGC declared that the Plan was

28  damaged by Mr. Covelli's actions because he allegedly had received $16 million *in fees from the*

1  *Plan.*  Thus, the big ticket item the PBGC seeks against Mr. Covelli and other Covelli Defendants
2  is return of all of those fees.

3      This is precisely the same relief sought by the PBGC from Settling Defendants.  The
4  PBGC alleges that Settling Defendants violated ERISA's prohibition against prohibited
5  transactions when they "authorized and caused the Pension Plan to pay the Participant Life
6  Insurance Transaction Fees" and "LT Funding Transaction Fees to Covelli . . . and/or the Covelli
7  Entities," which the PBGC alleges were "excessive and unreasonable."  (Doc. 1, ¶¶ 210, 212, 218,
8  220.)  Based on the harm caused to the Plan by paying these allegedly "excessive and
9  unreasonable" fees to the Covelli Defendants, the PBGC requested that the Settling Defendants
10  "make good all losses suffered by the Pension Plan" – by paying back to the Plan those very same
11  fees.  (Doc. 1, ¶¶ 124, 131, 137, 145, 152, 158, 210-213, 218-221, 224.)  This category of "losses
12  suffered" would necessarily include the very same "commissions . . . fees, and other financial
13  benefits that [the Covelli Defendants] earned, received, or obtained" that the PBGC demands from
14  the Covelli Defendants.  (Doc. 1, ¶¶ 173, 189, 231, 241.)  Therefore, in light of the duplicative
15  nature of the relief requested, preventing the Covelli Defendants from seeking a set-off  would
16  subvert § 877(a)'s goal of "prevent[ing] settlements from producing double recoveries in the case
17  of a single injury caused by joint tortfeasors."  *Carr v. Cove*, 33 Cal. App. 3d 851, 854 (1973).

18      The PBGC may argue that its pursuit of the remedy of "disgorgement" necessarily is
19  limited to "ill-gotten gains" and thus should not be seen as a double recovery.  But the PBGC's
20  label does not mask what it is largely seeking, and as it announced in Court:  *restitution* of all the
21  fees the Plan paid to the Covelli Defendants.  The PBGC stated as much in its Opposition to the
22  Covelli Defendants' Motion to Dismiss:  "As a remedy for the Covelli Defendants' knowing
23  participation in [the] fiduciary breaches and engagement in prohibited transactions," "the
24  Complaint seeks . . . the *return* of three specific funds, . . . that the Covelli Defendants received for
25  their role in" the Participant Life Insurance and LT Funding transactions.  (Doc. 41, 8:9-12, 10:26-
26  11:3.)  This relief is more restitutionary than disgorgement.  *See, e.g.*, *SEC v. Huffman*, 996 F.2d
27  800, 802 (5th Cir. 1993) (Distinguishing disgorgement from restitution:  "Disgorgement does not
28  aim to compensate the victims of the wrongful acts, as restitution does. . . .  Thus, a disgorgement

1  order might be for an amount more or less than that required to make the victims whole.") (citing

2  cases); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (analyzing a

3  claim for restitution based on plan monies paid to a beneficiary).  In short, whatever the label the

4  PBGC is applying to the relief it seeks, its own allegations shows that the money the PBGC is

5  trying to get from the Covelli Defendants overlaps with the money they were seeking from the

6  Settling Defendants – the fees paid by the Plan in connection with the challenged transactions.

7         Furthermore, to the extent the PBGC is seeking relief *in addition* to "disgorgement" or

8  restitution of the fees paid by the Plan to the Covelli Defendants, it is seeking a legal rather than

9  an equitable remedy, and it may not seek that under law.  In order to state a claim for "appropriate

10  equitable relief" under § 1132(a)(3), an ERISA plaintiff must establish that the remedy requested

11  is "directed against some specific thing; [equitable remedies] give or enforce a right to or over

12  some particular thing . . . rather than a right to recover a sum of money generally out of the

13  defendant's assets."  *Teets v. Great West Life & Ann. Ins. Co.*, 921 F.3d 1200, 1224 (10th Cir.

14  2019) (finding that claim for restitution or disgorgement failed because plaintiff could not identify

15  money or property belonging to the plaintiff that "could clearly be traced to particular funds or

16  property in the defendant's possession"); *see also Knudson*, 534 U.S. at 14 (distinguishing

17  between restitution at equity and restitution at law where ERISA plaintiff was unable to identify

18  particular funds paid by plaintiff to defendant); *Depot, Inc. v. Caring for Montanans, Inc.*, 915

19  F.3d 643, 661 (9th Cir. 2019) (affirming grant of motion to dismiss where restitution sought was

20  not equitable because plaintiffs failed to identify a "specific fund" to which they were entitled,

21  instead seeking to recover "some unidentified portion of the" payments received by the

22  defendants).  Thus to the extent the PBGC is seeking more than return of the fees paid, it is not

23  appropriate equitable relief under ERISA.[3]  Therefore, even if the Court were to determine that the

24  relief the PBGC seeks from the Covelli Defendants is not duplicative because it more closely

25

26  _____

27  [3] It appears that the PBGC's "disgorgement" relief may soon be barred.  On November 1, 2019, the Supreme Court granted certiorari in *Liu v. SEC*, No. 18-1501, on the question of whether governmental disgorgement is in fact a penalty and not equitable relief.  In 2017, the Supreme

28  court unanimously found that actions for disgorgement by the SEC were subject to the statute of limitations applicable to actions for penalties.  *Kokesh v. SEC*, 137 S.Ct. 1635 (2017).

**BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2 ADVISORS LLC**

resembles disgorgement than restitution, the relief requested is nevertheless defective – and thus should not prevent the Covelli Defendants from seeking a set-off.

## B. Ninth Circuit Case Law Interpreting ERISA Does Not Bar Any Claim by the Covelli Defendants For Contribution Or Indemnification.

As shown above, the Court need not reach the question of whether the Covelli Defendants may assert a claim for contribution or indemnification under ERISA because the existence or potential merit of these claims is not an element to the award of a settlement set-off under California Good Faith Settlement Law. The sole authority that the PBGC has provided to support its position that the Court must disregard part of the California Good Faith Settlement Law – the set-off provision – while simultaneously applying other parts of it to the proposed settlement – the good-faith determination and contribution/indemnity bar – is *Kim v Fujikawa*, 871 F.2d 1427, (9th Cir. 1987). But neither the facts nor reasoning of *Kim* apply to the question of whether this Court may selectively impose parts of the California Good Faith Settlement statute when approving the settlement.

In *Kim*, the Ninth Circuit faced the narrow question of whether an ERISA fiduciary has an implied right to contribution against a co-fiduciary in an action maintained under 29 U.S.C. § 1132(a). The plaintiff in *Kim*, an ERISA fiduciary, brought suit against another ERISA fiduciary for alleged violations of the prohibited transaction sections of ERISA, § 1109, and sought to hold liable the breaching fiduciary for all payments received in relation to the allegedly prohibited transactions. *Id.* at 1429. In response, the breaching fiduciary brought a contribution claim putatively under § 1132(a) against the fiduciary-plaintiff for participation in the same prohibited transactions that gave rise to the defendant's liability. *Id.* at 1432. Defendant maintained that he was entitled to bring an action for contribution under ERISA's civil action provision in § 1132(a) because "Congress provided for 'broad equitable remedies'" by authorizing fiduciaries, among other identified persons, to bring actions for "other appropriate equitable relief." *Id.* at 1432.

The Ninth Circuit disagreed, explaining that ERISA's bar on prohibited transactions "only establishes remedies for the benefit of the *plan*. Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*." *Id.* The

11

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2 ADVISORS LLC

Ninth Circuit similarly declined to find that ERISA's civil action provision, § 1132(a), authorized contribution actions between two fiduciaries.  Specifically, the *Kim* court emphasized that it was unlikely that Congress "simply forgot to incorporate" a remedy for *inter-fiduciary* contribution in § 1132(a) where fiduciaries are "the class [] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans]." *Id.* at 1433 (quoting *Texas Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981)) (bracketed text in original).

There are three reasons why *Kim* does not control the Court's inquiry as to whether the Covelli Defendants can bring a claim for contribution or indemnification against Settling Defendants under ERISA.  First, the *Kim* court did not address a *non-fiduciary's* contribution rights under ERISA.  And indeed it could not:  the question presented to the *Kim* court was whether ERISA "prohibit[s] actions for contribution among *fiduciary trustees*." *Id.* at 1432 (emphasis added).  This distinction is significant because the *Kim* court's rationale hinged on the central role that fiduciaries occupy as to the text and congressional purpose of ERISA. Specifically, the court emphasized that it would be "inappropriate" to find an implied right to contribution among co-fiduciaries because fiduciaries were the class of individuals whose behavior Congress intended to regulate. *Id.* at 1433.  Second, unlike the fiduciary in *Kim*, the Covelli Defendants *do not seek contribution under § 1132(a),* or any of the other civil enforcement provisions contained in § 1132, because the unambiguous text of these section does not authorize any actions by *non-fiduciaries*. *See* § 1132(a) ("A civil action may be brought [] by a participant or beneficiary . . . the Secretary . . . or a fiduciary").  *Kim* focuses on the powers to sue that Congress authorized, and limited, as to certain parties intimately involved in a pension plan, such as fiduciaries of plan. The rights to sue of non-fiduciary third parties are not defined or limited by Congress, either at Section 1132 or anywhere else.  Thus *Kim*'s explication of how Section 1132 works with respect to certain parties covered by the statute has no bearing on persons not covered, such as the non-fiduciary Covelli Defendants.  Third, the procedural posture of *Kim* is inapposite:  *Kim* did not consider whether an ERISA fiduciary must first establish contribution rights in order to obtain a set-off under California Code Civil Procedure § 877(a) or any other similar provision.  Therefore, *Kim* does not apply to the question before the Court as to

1    whether a non-fiduciary must establish contribution rights under ERISA to obtain a set-off in

2    conjunction with a settlement.

3          Furthermore, the rationale of the *Kim* decision should not be extended to this distinct

4    question because the *Kim* decision was explicitly tethered to the policy considerations implicated

5    by permitting a breaching fiduciary, a class intentionally and explicitly regulated by Congress, to

6    seek contribution from other fiduciaries.  Beyond the PBGC's reliance on *Kim*, the PBGC has yet

7    to point to a single Ninth Circuit case – and the Covelli Defendants are unaware of any such cases

8    – establishing that the Covelli Defendants, as persons not covered by Section 1132, are barred

9    from bringing a contribution or indemnity claim against the Settling Defendants, or maintaining

10    any other action that it has a right to.  *See Call v. Sumitomo Bank of Cal.*, 881 F.2d 626 (9th Cir.

11    1987) (inter-fiduciary contribution); *Soohyun Cho v. First Reliance Standard Life Ins. Co.*, 2019

12    WL 324723 (C.D. Cal. Apr. 8, 2019) (inter-fiduciary contribution and equitable indemnification);

13    *Bd. of Trs. of Cal. Winery Workers Pension Tr. Fund v. Union Bank N.A.*, 2011 WL 1321602

14    (N.D. Cal. Apr. 6, 2011) (inter-fiduciary contribution); *Brown v. Cal. Law Enforcement Ass'n,*

15    *Long-Term Disability Plan*, 81 F. Supp. 3d 930 (N.D. Cal. 2015) (inter-fiduciary contribution);

16    *Meoli v. Am. Medical Servs.*, 35 F. Supp. 2d 761 (S.D. Cal. 1999) (inter-fiduciary indemnification

17    rights); *Youngberg v. Bekins Co.*, 930 F. Supp. 1396 (1996) ( holding that there is a right of

18    indemnification between fiduciaries).

### C.    Covelli Defendants Have A Right To Bring A Contribution Or Indemnification Action Under State Or Federal Common Law.

20          As discussed throughout, the PBGC's argument amounts to the assertion that the Covelli

21    Defendants would not have a "right" to bring an action for contribution or indemnity against its

22    fellow alleged tortfeasors.  And, as shown throughout, that argument is not relevant to the

23    operation of Cal. Code Civ. Proc. §§ 877 and 877.6  But in any event, there is no question such a

24    cause of action does exist under state law, *see* Cal. Code Civ. Proc. § 875, and no question that

25    neither the holding nor reasoning of *Kim* applies to whether the Covelli Defendants would have

26    such rights under federal law.

**State law right to contribution**.  Joint tortfeasors under California law have rights of contribution and indemnity against each other. Cal. Code Civ. Proc. § 875(a) ("Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as herein-after provided."); *American Motorcycle Assn. v. Superior Court*  20 Cal.3d 578, 598 (1978) (equitable indemnity).  Aside from *Kim*, the PBGC has proffered no authority for barring these state law rights (and, as discussed, *Kim* does not address any right to contribution outside the context of § 1132(a)).

Despite the fact that Settling Defendants' affirmatively invoke California law and that the PBGC consented as part of its settlement to such invocation, the PBGC may argue that ERISA "pre-empts" the application of the California Good Faith Settlement Law.  But ERISA does not do so.  Ninth Circuit precedent directs courts to consider whether a state law claim is preempted by ERISA's civil action provisions by applying the test articulated by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Under *Davila*, a state-law claim – here, the Covelli Defendants' theoretical contribution or indemnification claims – is completely preempted if:  (1) the moving party "could have brought [the] claim under ERISA [§ 1132(a)][4]" *and* (2) "there is no other independent legal duty that is implicated by" the opposing party's actions.  *Davila*, 542 U.S. at 210.  This test is "conjunctive, and both elements need to be met to show complete preemption."  *Hansen v. Grp. Health Cooperative*, 902 F.3d 1051, 1059 (9th Cir. 2018).

Here, any contribution or indemnification claims brought by the Covelli Defendants against Settling Defendants are not preempted because the first element of the *Davila* test is not satisfied.  Specifically, the Covelli Defendants cannot bring any contribution or indemnification

---

[4] Although *Davila* explicitly referred to § 1132(a)(1)(B), both the Supreme Court as well as the Ninth Circuit have explained that *Davila* extends to other subparts of § 1132, ERISA's civil enforcement section.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § [1132(a)] removable to federal court"); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799 (9th Cir. 1987) (complete preemption analysis applies to § 1132(a)(3) claims).

1    claims under § 1132 civil action provision because the statute's text does not authorize an action

2    by non-fiduciaries.  Section 1132(a) identifies eleven separate categories of "[p]ersons empowered

3    to bring a civil action," including:  "a participant or beneficiary"; "the Secretary"; "a fiduciary";

4    and "a State."  § 1132(a)(1)-(11).  Nowhere in this laundry list of authorized litigants does the

5    category of *non-fiduciary* appear.  Therefore, because the Covelli Defendants could not bring any

6    claim for contribution or indemnification against Settling Defendants under ERISA's civil action

7    provisions, and because "both elements need to be met" for preemption to exist, there is no ERISA

8    preemption of a potential state law claim for indemnification or contribution by the Covelli

9    Defendants.  *Hansen*, 902 F.3d at 1059.

10

11          **Federal Common law claims for contribution or indemnity.**  The PBGC might argue

12   that ERISA governs any theoretical claim for contribution or indemnity for liability imposed by

13   ERISA, but even if that were true the Covelli Defendants would still have a right to bring an

14   action for contribution or indemnity.  That is because such causes of action also exist under federal

15   common law, which the United States Supreme Court has held applies when construing the rights

16   and liabilities of non-fiduciaries in ERISA actions.  There is a right to contribution or

17   indemnification in favor of non-fiduciaries under the federal common law because these rights are

18   central to the law of trusts, the "starting point for analysis" of ERISA, and would not interfere or

19   obstruct the purposes of ERISA.  *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530

20   U.S. 230, 250 (2000).

21          It is "undisputed that Congress wanted federal courts to 'develop a federal common law of

22   rights and obligations under ERISA-regulated plans.'"  *Firestone Tire & Rubber Co. v. Bruch*, 489

23   U.S. 101, 110 (1989).  In carrying out this mandate, federal courts have developed the federal

24   common law guided by and pursuant to the principles and concepts of traditional trust law.  See

25   Firestone, 489 U.S. at 110 ("ERISA abounds with the language and terminology of trust law. . . .

26   ERISA's legislative history confirms that the Act's fiduciary responsibility provisions . . . codify

27

28

and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law

of trusts."); *Eaves v. Penn*, 587 F.2d 452, 462-63 (10th Cir. 1987) ("In developing a law of

remedies, the Congress intended the federal courts to draw on principles of traditional trust law.").

Indeed, the Supreme Court relied principally on the law of trusts in authorizing non-fiduciary

liability in Harris Trust – the case that the PBGC relies on to maintain this action against the

Covelli Defendants – providing that the "common law of trusts . . . offers a 'starting point for

analysis [of ERISA unless] it is inconsistent with the language of the statute, its structure or its

purposes." Harris Trust, 530 U.S. at 250.  Specifically, the Harris Trust court concluded for the

first time that a non-fiduciary party in interest could face liability under ERISA because the

"common law of trusts . . . plainly countenances the sort of relief" at issue.  Id. (citing to

Restatement (Second) of Trusts; 4 A. Scott & W. Frachter, Law of Trusts; 1 D. Dobbs, Law of

Remedies; G. Bogert, Law of Trusts and Trustees).

      The Supreme Court has further explained that federal courts should draw on the common

law of trusts in developing federal common law under ERISA unless "it is inconsistent with the

language of the statute, its structure or its purposes."  *Harris Trust*, 530 U.S. at 250.  Here, the

right to seek contribution or indemnification from a joint tortfeasor or co-obligor is a central

principle in the law of trusts.  *See Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12,

16 (2d Cir. 1991) ("the right of contribution among co-trustees has been for over a century, and

remains, and integral and universally-recognized part of trust doctrine"); *G. Bogert*, The Law of

Trusts and Trustees, § 868, p. 101 (Rev. 2d ed. 1995) ("The liability of the trustee and third party

is joint and several.  If the trustee is obliged to pay the whole claim, he may under some

circumstances have a right of contribution from his co-defendant, the third party who participated

with him in the breach.").  Therefore, non-fiduciaries have a right to contribution or

indemnification under federal common law as long as these actions are not "inconsistent" with

ERISA's text or purpose.

Permitting a non-fiduciary to seek contribution or indemnification[5] is in no way "inconsistent" with ERISA's purpose in regulating the conduct of fiduciaries for the benefit and protection of ERISA beneficiaries and participants. *See Guididas v. Comm'y Nat. Bank Corp.*, 2012 WL 5974984, at *5 (M.D. Fla. Nov. 5, 2012) ("Congress has clearly spoken that ERISA's purpose is to protect plan participants and beneficiaries."). Specifically, permitting a non-fiduciary to seek contribution or indemnification from a breaching fiduciary would in no way impact the recovery of an ERISA plaintiff. To the contrary, an ERISA plaintiff could proceed pursuant to ERISA's civil action provisions embodied § 1132 to recover the full loss caused by the breaching non-fiduciary and fiduciary who are jointly and severally liable to the plaintiffs. Indeed, the Second Circuit has recognized contribution rights among *co-fiduciaries* on these very grounds: "There is no reason why a single fiduciary who is only a partially responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue." *Chemung*, 838 F.2d at 16. This reasoning is particularly salient in the current case before the Court where the non-fiduciary's liability is premised on the actions of the fiduciaries. *See* (Doc. 1, Counts IX and X, Knowing Participation in Breaches of Fiduciary Duty in Violation of ERISA.)

For all these reasons, any theoretical claim by non-fiduciary Covelli Defendants to seek contribution or indemnification from fiduciaries Kushner and Spitz is not "inconsistent" with ERISA's text, structure, or purpose. *Harris Trust*, 530 U.S. at 250. Moreover, it would be fundamentally unfair to permit actions for non-fiduciary liability, as authorized by the *Harris*

---

[5] An action for contribution under ERISA has been held to be "a *procedural device* for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses" as opposed to a new "right of action" under the statute. *Chemung*, 939 F.2d at 15 (emphasis added). And the Covelli Defendants do not contend that a contribution action by a non-fiduciary amounts to an implied right of action under ERISA. To the contrary, the Covelli Defendants maintain that the Court, if it determines that it is necessary to reach this inquiry, should find a right to contribution under federal common law, consistent with the common law of trusts.

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2 ADVISORS LLC

*Trust* Court and pursuant to the traditional law of trusts, while simultaneously failing to recognize a non-fiduciary's contributions rights – an "integral and universally-recognized" aspect of trust law. *Chemung*, 939 F.2d at 16.

### D.   The Covelli Defendants Are Entitled To Bring Contribution or Indemnification Claims In The Bankruptcy Action.

In addition to the Covelli Defendants' ability to seek a set-off from the proposed Settlement between the Settling Defendants and the PBGC in this action, § 877(a) authorizes the Covelli Defendants to seek a set-off as to any amount of the proposed Settlement that is applied to the bankruptcy action.  The adversarial action brought in connection with the bankruptcy proceeding, *Official Committee of Unsecured Creditors of Freedom Communications Inc. v. Aaron Kushner, et. al.*, Case No. 8:15-bk-15311, alleges causes of action against the Covelli Defendants under California law for aiding and abetting with respect to the same two transactions that the PBGC challenges in the current action.  And, the proposed settlement between the PBGC and Settling Defendants makes clear that the settlement is intended to resolve this action and the "parallel adversary proceeding in the United States Bankruptcy Court for the Central District of California where the plaintiff alleges breach of fiduciary duty, *involving California substantive law claims*."  (Doc. 59, 7:13-15) (emphasis added.)  On this basis, and after affirmatively invoking California state law as to this action and the related bankruptcy action, the PBGC and Settling Defendants ask the Court and the Bankruptcy Court to determine that the proposed Settlement was made in good-faith.  (*See* Doc. 59-1, § 2, Approval Motions) (Within five (5) business days of the Execution Date, (a) the OCUC shall file a motion in the Bankruptcy Court in the Bankruptcy Case seeking approval of this Agreement . . . seeking a finding that the settlement embodied in this Agreement was made in good faith pursuant to Cal. Code Civ. Proc.  § 877.6 (or statutes or case law of similar effect) and (b) Kushner and Spitz shall jointly file a motion in the District Court in the PBGC Action seeking a finding that the settlement embodied in this Agreement was made in

good faith pursuant to Cal. Code Civ. Proc. § 877.6 . . ."); (*see also* Doc. 68-2, OCUC's Motion for Order Approving Settlement) (contending that the proposed Settlement satisfies § 877.6 and requesting a "finding that the Settlement Agreement was entered into in good faith pursuant to Cal. Code Civ. Proc. § 877.6.".)  Therefore, for all the reasons that the Covelli Defendants are entitled to a set-off in this action, the Covelli Defendants should also receive a set-off in full of any amounts applied to the bankruptcy action, including the amount of the settlement that the PBGC chose to earmark as fees for counsel.  *See In re Gorina*, 269 B.R. 23, 28 (C.D. Cal. 2002) (declining to modify a set-off under § 877(a) by the amount represented by costs and attorney's fees); *Reed*, 73 Cal. App. 4th 444-45 (because § 877(a) only speaks of "claims," there is no reduction from set-off for costs awards).

## III.   CONCLUSION

For the foregoing reasons, the Court should determine that the Covelli Defendants are entitled to a set-off under California Code Civ. Proc. § 877(a), the law governing the PBGC's and Settling Defendants' proposed Settlement in this action and the related bankruptcy action.


DATED:  November 18, 2019                SCHEPER KIM & HARRIS LLP
                                         WILLIAM H. FORMAN
                                         ALEXANDER H. COTE
                                         MARGARET E. DAYTON



                                 By:       /s/ *William H. Forman*
                                         _____
                                         William H. Forman
                                         Attorneys for Defendants Richard J. Covelli, JTR
                                         LLC, C&C Marketing LLC, C2 Advisors, LLC

BRIEFING OF DEFENDANTS RICHARD J. COVELLI, JTR LLC, C&C MARKETING LLC, AND C2
ADVISORS LLC